Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 05-35765 (LMW) |
| | ) | | |
|   WILLIAM F. SHAW, | ) | CHAPTER | 7 |
| | ) | | |
|         DEBTOR. | ) | DOC. I.D. NOS. | 67, 72 |
| | | | |
|   WILLIAM F. SHAW, | ) | | |
| | ) | | |
|         MOVANT | ) | | |
| | ) | | |
|   vs. | ) | | |
| | ) | | |
| LAURA REGAN, ZONING ENFORCEMENT OFFICER OF THE TOWN OF NEW MILFORD, CONNECTICUT, PAUL CACECI DDS, STATE OF CONNECTICUT, CAPITAL ONE, CACV OF COLORADO, LLC, PALISADES COLLECTION, LLC, NEW MILFORD HOSPITAL, | ) | | |
| | ) | | |
|         RESPONDENTS. | ) | | |

**APPEARANCES**

Harry Cohen, Esq.                         Attorney for the Debtor
Law Offices of Harry Cohen
54 Bridge Street
New Milford, CT 06776

John D. Tower, Esq.                       Attorney for the Laura Regan, Zoning
Cramer & Anderson, LLP                    Enforcement Officer for the Town of
51 Main Street                            New Milford
New Milford, CT 06776

**MEMORANDUM OF DECISION AND ORDER**
**RE: DEBTOR'S AMENDED MOTION TO AVOID JUDICIAL LIEN**

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court are the following matters (collectively, the "Matter"): (1) the Amended Motion To Avoid Judicial Lien on Real Estate (Doc. I.D. No. 67, the "Motion")[1] filed by the above-referenced debtor (the "Debtor"), and (2) the objection (Doc. I.D. No. 72, the "Objection") of respondent, Kathy Castagnetta, Zoning Enforcement Officer of the Town of New Milford, Connecticut[2] to the Motion. The court has jurisdiction over the Matter as a core proceeding under 28 U.S.C. §§ 1334 and 157 and that certain Order dated September 21, 1984 of this District (Daly, C.J.)[3] This memorandum constitutes the findings of fact and conclusions of law required by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

**I.     RELEVANT BACKGROUND**

The Debtor commenced this chapter 7 case by petition filed on October 7, 2005 (the "Petition Date"). (*See* Doc. I.D. No. 2.) Filed with that petition were the Debtor's bankruptcy schedules. (*See id.*) On Schedule A (Real Property) the Debtor lists a "Fee Simple" interest in his residence in New Milford, Connecticut (the "Property") with a stated value of $165,000.00. In his Schedule C (Property Claimed as Exempt) the Debtor claims a homestead exemption (the

---

[1]     References herein to the docket of this chapter 7 case are in the following form: "Doc. I.D. No. __."

[2]     By order dated February 26, 2008, Laura Regan was substituted for Ms. Castagnetta as respondent having succeeded Ms. Castagnetta as Zoning Enforcement Officer. (*See* Doc. I.D. No. 82.) For convenience sake, Ms. Regan (in her official capacity) hereafter is referred to as the "Town." The Town objected to the Motion; neither the State (as hereafter defined) nor the Other Respondents (as hereafter defined) objected to the Motion.

[3]     That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

- 2 -

"Homestead Exemption") under Conn. Gen. Stat. § 52-352b(t) and 11 U.S.C. § 522(b)(2)[4] in the amount of $75,000.00 with respect to his interest in the Property.[5]  In his Schedule D (Creditors Holding Secured Claims), the Debtor listed the following liens in respect of the Property as of the Petition Date: (1) a mortgage (the "First Mortgage") in the outstanding amount of $90,000.00; (2) a judgment lien held by the Town in the outstanding amount of $91,728.00; (3) a judgment lien held by Capital One in the amount of $1,164.85; (4) a second judgment lien held by Capital One in the outstanding amount of $1,688.56; (5) a judgment lien held by CACV of Colorado, LLC in the amount of $7,013.03; and (6) a judgment lien held by Palisades Collection, LLC in the outstanding amount of $5,644.12.[6]  The Debtor received his chapter 7 discharge on January 23, 2006 and the chapter 7 trustee filed his "Report of No Distribution" on the same day.

The Debtor filed the Motion on January 23, 2008.  The Motion seeks to avoid the liens of the above-referenced respondents (including the Town) pursuant to Bankruptcy Code § 522(f)(1). (*See* Doc. I.D. No. 67.)  The Motion asserts that the Property "has been appraised at $149,900.00 [as of the Petition Date]" (*see id.* ¶ 9) and also asserts the Homestead Exemption (*see id.* ¶ 3).  The Motion asserts that the Property is subject to the following prepetition liens (in addition to the First Mortgage):[7]

---

[4]    References herein to title 11 of the United States Code or to the Bankruptcy Code are references to the same as they appeared prior to the effective date of their amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[5]    Schedule C lists the "Current Market Value" of the Property as $175,000.00.  That the Homestead Exemption is a valid exemption in this case is uncontested.

[6]    None of those secured claims is listed as "disputed."

[7]    Those liens are listed below in the order of recordation.

- 3 -

(1) Judgment Lien in favor of Paul Caceci, DDS dated December 26, 1991 and recorded in volume 445 at page 798 of the New Milford Land Records in the amount of $204.20 plus lawful interest;

(2) Certificate of Lien in favor of the State of Connecticut (the "State") dated March 4, 1992 and recorded in volume 448 at page 291 of the New Milford Land Records;

(3) Judgment Lien (the "Senior Town Lien") in favor of the Town and recorded on August 21, 2002 in volume 715 at page 598 of the New Milford Land Records in the amount of $3,735.60;

(4) Judgment Lien in favor of Capital One dated August 27, 2003 and recorded in volume 778 at page 1032 of the New Milford Land Records in the original principal amount of $1,653.56 plus $35.00 for costs of suit and judgment interest;

(5) Judgment Lien in favor of Capital One dated August 27, 2003 and recorded in volume 778 at page 1036 of the New Milford Land Records in the original principal amount of $1,129.85 plus $35.00 for costs of suit and judgment interest;

(6) Judgment Lien in favor of CACV of Colorado, LLC dated November 10, 2004 and recorded in volume 838 at page 974 of the New Milford Land Records in the original principal amount of $7,013.03 plus costs of suit and statutory interest;

(7) Judgment Lien in favor of Palisades Collection, LLC dated December 13, 2004 and recorded in volume 843 at page 777 of the New Milford Land Records in the original principal amount of $5,180.28 plus costs and judgment interest;

(8)  Judgment Lien (the "Junior Town Lien") in favor of the Town and recorded on February 8, 2005 in volume 848 at pages 127-129 of the New Milford Land Records in the amount of $91,728.00; and

(9)  Judgment Lien in favor of New Milford Hospital dated July 5, 2005 and recorded in volume 865 at page 833 of the New Milford Land Records in the original principal amount of $1,759.92 plus costs of $35.00.[8]

The Town filed the Objection on January 29, 2008. The Objection incorporated by reference much of a prior objection by the Town (Doc. I.D. No. 19). (*See* Doc. I.D. No. 72.) The Objection objected to the Motion on the assertion that the Property was worth no less than $190,000.00.[9] (*See* Doc. I.D. Nos. 19, 72.) The Matter came on for an evidentiary hearing on April 7, 2008 and was continued for further evidentiary hearing to May 5, 2008.[10] At the Hearing, the following persons testified for the Debtor: the Debtor and Sally Rinehart (a real estate broker). At the Hearing, the following persons testified for the Town: the Debtor; Fred Lagreca (an appraiser) and Kathleen

---

[8]  The liens listed at (1), (2), (4), (5), (6), (7) and (9) hereafter are collectively referred to as the "Other Liens." The holders of the Other Liens listed above other than the State are referred to collectively herein as the "Other Respondents." The Motion also attacked the validity of the Town's liens. (*See* Doc. I.D. No. 67 ¶ 5.) Debtor's counsel has been advised by the court that that issue must be litigated (if at all) in an adversary proceeding. *Cf.* Fed. R. Bankr. P. 7001(2).

[9]  That claimed value was supported by an appraisal report dated as of March 16, 2005 prepared by Douglas Lutz. (*See* Doc. I.D. No. 19, Exhibit F.) That appraisal was updated by Mr. Lutz to October 4, 2005. (*See id.,* collectively, the "Prior Appraisal".) The Prior Appraisal was based on "an exterior only inspection of the . . . [P]roperty . . . ." (*See id.* (Appraisal Update).) An additional ground for objection stated in the Objection subsequently was withdrawn by the Town. (*See* Doc. I.D. No. 72).)

[10]  The April 7, 2008 hearing and the continued hearing are hereafter referred to collectively as the "Hearing." A transcript of the April 7, 2008 hearing appears in the record of this case as Doc. I.D. No. 111 (the "First Transcript"). A transcript of the (continued) May 5, 2008 hearing appears in the record of this case as Doc. I.D. No. 110 (the "Second Transcript").

Conway (the Town's Tax Assessor). Both sides placed documentary evidence in the record.[11] At the conclusion of the evidentiary portion of the Hearing, the court heard the closing arguments of the parties and took the Matter under advisement. The Matter now is ripe for decision.

## II.    FACTS[12]

The Debtor bought the Property in 1988 for $140,000.00. (First Transcript at 15, 50 (testimony of the Debtor).) The Property abuts a land fill (which the Debtor says is active). (First Transcript at 29-30, 41 (testimony of the Debtor).) The Property may have had one (possibly two) tenant(s) in 2005 but the Debtor could not recall. (*See* First Transcript at 133-38 (testimony of the Debtor); *cf.* Doc. I.D. No. 2 - Schedule I (showing $1,000 per month in rental income as of the Petition Date).) In or around July of 2005, the Town filed a complaint in the Litchfield Superior Court to foreclose its liens. (*See* Doc. I.D. No. 19 (Exhibit A).) The holder of the First Mortgage commenced foreclosure proceedings thereon (the "Foreclosure Action") some time (prepetition) in 2005. (*See* Town Exh. 4.) Postpetition, the Debtor placed a second mortgage on the Property in the approximate amount of $53,000.00 (without seeking the approval of this court).[13] (First Transcript at 138-39 (testimony of the Debtor).) However, the Debtor did not advise that lender of the alleged problems (discussed below) with the Property. (*See id.* at 139 (testimony of the Debtor).)

---

[11]    References herein to the Debtor's exhibits appear in the following form: "Debtor Exh. __." References herein to the Town's exhibits appear in the following form: "Town Exh. ___."

[12]    Additional facts are set forth in part III.B, *infra*.

[13]    It is uncontested that such second mortgage is not properly included in the Section 522(f)(2) calculation because it did not exist as of the Petition Date.

### III.   ANALYSIS

#### A.   Applicable Law

Section 522(f) provides in relevant part as follows:

> (1) Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is–
>   (A) a judicial lien . . . .
> (2) (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of–
>   (i)  the lien;
>   (ii)  all other liens on the property; and
>   (iii)  the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens . . . .

11 U.S.C.A. § 522(f) (West 2005). "Impair[ment]" of an exemption within the purview of Section 522(f)(1) is determined solely by resort to the statutory formula set forth in Section 522(f)(2). *See, e.g., Trahan v. Day Kimball Hospital (In re Trahan),* 337 B.R. 448 (Bankr. D. Conn. 2006) (Krechevsky, J.). Every factual element required under Section 522(f)(1) and (2) (*e.g.,* property value and lien amounts) is determined as of the petition date. *See In re Fox,* 353 B.R. 388, 393 (Bankr. D. Conn. 2006). The Debtor bears the burden of proof by a preponderance of the evidence on every element of Section 522(f)(1) and (2). *See, e.g., In re Fox, supra.*

#### B.   Application of Law to Fact

The Motion requires findings on three issues: the value of the Property as of the Petition Date; the balance of the First Mortgage as of the Petition Date; and the amount of the Other Liens as of the Petition Date. Each of the foregoing is discussed in turn below.

### 1. **Property Valuation**

The Debtor testified at the Hearing that, in his opinion, the Property was worth $139,000.00 as of the Petition Date. (First Transcript at 32.)[14] The Debtor further testified that, as of the Petition Date, the Property was in poor condition due to substantial structural and other problems. (*See* First Transcript at 19-29.) Except to the extent such testimony is corroborated by other credible testimony, the court gives the Debtor's testimony little weight. That is because, based on this record, the court has serious doubts about the trustworthiness of the Debtor's testimony. (*Cf.* First Transcript at 139:10-11 ("I'd probably even lie to them about money I made just to save my home . . . .") (testimony of the Debtor).)

Sally Rinehart also testified for the Debtor on the issue of Property valuation and condition as of the Petition Date. Ms. Rinehart is a licensed real estate broker and formerly held (but does not now hold) an appraiser's license. (*See* Second Transcript at 9-10 (testimony of Ms. Rinehart).) Ms. Rinehart also held a license as a new home contractor for several years (but apparently no longer holds that license). (Second Transcript at 47 (testimony of Ms. Rinehart).)

Ms. Rinehart testified that based upon her personal and "thorough physical inspection of . . . both the outside and the inside [of the Property] . . . I found that the [P]roperty was in very poor condition [in mid-November of 2005]." (Second Transcript at 24:14-17, 27; *see also* Debtor Exh. B (first page only).[15]) Ms. Rinehart also testified that, in her opinion, the Property was worth $140,000.00 as of the Petition Date. (*See* Second Transcript at 29.) Because only the summary page

---

[14] As the owner of the Property, the Debtor is competent to testify as to its value. *See, e.g., In re Petrella,* 230 B.R. 829, 834 n.5 (Bankr. N.D. Ohio 1999).

[15] The remainder of Debtor Exh. B was excluded from evidence because counsel for the Debtor provided only the first page thereof to counsel for the Town prior to the Hearing. (*See* Second Transcript at 22-24.)

of Debtor Exh. B was admitted into evidence and Ms. Rinehart could not otherwise sufficiently support her opinion (*see, e.g.,* Second Transcript at 49 (testimony of Ms. Rinehart)), the court gives Ms. Rinehart's opinion testimony little weight. However, the court credits Ms. Rinehart's testimony as to Property condition and notes that her testimony substantially corroborates that of the Debtor on the issue of Property condition as of the Petition Date.

Fred Lagreca testified for the Town on the issue of Property value as of the Petition Date. The court finds Mr. Lagreca to be a highly qualified real estate appraiser. Mr. Lagreca testified that, in his expert opinion, the Property was worth $217,000.00 as of the Petition Date. (*See* First Transcript at 85-86. *See also* Town Exh. 2 (Mr. Lagreca's Appraisal Report).)[16] Mr. Lagreca's appraisal (the "Lagreca Appraisal") was an "exterior only" or "drive by" appraisal whereby he did not examine the interior of the Property structure and relied upon certain aspects of the Prior Appraisal. (*See* First Transcript at 67, 88-89 (testimony of Mr. Lagreca).) Except with respect to the "drive by" nature of the Lagreca Appraisal, the court gives that appraisal substantial weight.

Kathy Conway, Tax Assessor for the Town, testified for the Town as to Property valuation as of the Petition Date. Ms. Conway testified that, in connection with the October 1, 2005 reevaluation that was done for the Town, the Property was assessed at a fair market value of $255,600.00. (*See* First Transcript at 122.) Ms. Conway did not testify from personal knowledge. (*See* First Transcript at 129-30.) Accordingly, the court gives Ms. Conway's testimony little weight.

As noted above, the court is persuaded by the Lagreca Appraisal except that the court is convinced that the Lagreca Appraisal did not accurately reflect Property condition as of the Petition

---

[16] Mr. Lutz, the author of the Prior Appraisal, appears to be (or have been) a colleague or subordinate of Mr. Lagreca. (*See* First Transcript at 77 (testimony of Mr. Lagreca).) However, the Debtor did not attempt to impeach Mr. Lagreca with the Prior Appraisal. Accordingly, neither will this court.

Date. Also as noted above, the court is persuaded by the Debtor's and Ms. Rinehart's testimony that the Property's condition as of the Petition Date was "very poor." Giving due weight to the foregoing and taking into account the range of property condition adjustments in the Lagreca Appraisal (*see* Town Exh. 2), the court is convinced that adjusting the Lagreca Appraisal by a further $40,000.00 for actual Property condition as of the Petition Date will produce a proper estimate of fair market value as of that date. Accordingly, the court finds that the Property had a fair market value of $177,000.00 as of the Petition Date.

### 2. **First Mortgage Balance**

The Debtor testified that the balance of the First Mortgage as of the Petition Date was approximately $90,000.00. (*See* First Transcript at 33.) However, at the Hearing, the Debtor was impeached with Town Exh. 4 which is an affidavit of debt filed in the Foreclosure Action which showed the principal portion of the First Mortgage Debt to be $79,805.07 as of June 8, 2007. (*See* First Transcript at 46-48) The court has little faith in the Debtor's testimony as to the First Mortgage balance as of the Petition Date. On the other hand, it is a fair inference that the principal balance of the First Mortgage as of June 8, 2007 was less than and not greater than the First Mortgage balance as of the Petition Date. Accordingly, for the present purposes only, the court finds the balance of the First Mortgage as of the Petition Date to be $79,805.07.

### 3. **Amount of Other Liens**

The record is devoid of credible evidence of the amount of the Other Liens as of the Petition Date. Accordingly, for the present purposes only, the court finds the aggregate amount of the Other Liens to be $0.00.[17]

---

[17] The foregoing obviates the issue as to the Other Liens raised by the Town. *Cf. In re Relyea,* No. 01-11549, 2003 Bankr. LEXIS 2254 (Bankr. N.D.N.Y. Aug. 26, 2003) (cited by the

**4.     Section 522(f)(2) Calculation**

Using the amounts found above, the Section 522(f)(2) "impairment" calculation here is:

| | |
|---|---|
| $ 177,000.00 | (Fair Market Value of Property) |
| -    75,000.00 | (Amount of Homestead Exemption) |
| -    79,805.07 | (Amount of First Mortgage) |
| -      3,735.60 | (Amount of Senior Town Lien, exclusive of related interest and the like (collectively, "Other Charges")) |
| -    91,728.00 | (Amount of Junior Town Lien, exclusive of related Other Charges) |
| - $ 73,268.67 (plus related Other Charges) | (Avoided Amount of Junior Town Lien) |

**IV.     CONCLUSION**

For the reasons discussed above, the Motion is granted in part and denied in part, and the Objection is overruled in part and sustained in part, and a separate order will enter:

(A)     Avoiding the Other Liens in their entirety, *provided, however,* no relief shall be granted with respect to the lien of the State;[18] and

(B)     Avoiding the Junior Town Lien but only to the extent set forth above.

It is **SO ORDERED**.

Dated: October 9, 2008                          BY THE COURT

                                    Lorraine Murphy Weil
                                    United States Bankruptcy Judge

---

Town in oral argument).

[18]     Although the State did not object to the Motion, no record has been made that such lien is a "judicial lien" and, for that reason, the court declines to grant relief as to the State. Postpetition encumbrances (if any) are not to be avoided by the contemplated order.